# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>2016 white BMW X5 bearing California license plate<br>8ZYU141 | )<br>)<br>)  Case No.  '24 MJ1294 VET<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

    I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

    ☑ evidence of a crime;

    ☑ contraband, fruits of crime, or other items illegally possessed;

    ☑ property designed for use, intended for use, or used in committing a crime;

    ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2119, 924(c), 922(g) | Carjacking, Brandishing a Firearm During a Crime of Violence ad Felon in Possession of a Firearm |

The application is based on these facts:

See Affidavit in Support of Search Warrant

    ☑ Continued on the attached sheet.

    ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Anne Skomba, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone (specify reliable electronic means).

Date: _____ 04/01/2024 _____

_____
*Judge's signature*

City and state: _____ San Diego, California _____

Valerie E. Torres, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Anne E. Skomba, a Special Agent with the Federal Bureau of Investigation ("FBI"), San Diego, California, having been duly sworn, state under oath as follows:

### I.     PURPOSE OF THE AFFIDAVIT

1.     This affidavit is made in support of a search warrant for evidence of crimes, specifically, violations of Title 18 U.S.C. § 2119, Carjacking, Title 18 U.S.C. § 924(c)(Brandishing a Firearm during a Crime of Violence) and Title 18 U.S.C. § 922(g)(Felon in Possession of a Firearm), for the following:

   a. **Subject Vehicle** – 2016 white BMW X5 with California license plate 8ZYU141. The search of the **Subject Vehicle** includes a search of its telematics/infotainment systems, which as detailed below, includes geolocational data, navigational information, and the call logs, contact list, and SMS messages sent through or synced to the system;

as detailed in Attachment A, respectively.

2.     Based on the facts below, there is probable cause to believe that the search of the foregoing locations will result in the discovery of:

   a.  evidence of a crime; and

   b.  property designed for use, intended for use, or used in committing a crime.

3.     This affidavit sets forth a full and complete statement of the facts necessary to justify the requested Order. Because this Affidavit is submitted for the limited purpose of establishing probable cause to search the locations set forth below for evidence of the crimes set forth herein, this document does not contain all of my knowledge of the larger investigation.  Dates and times are approximate.

### II.     TRAINING, EXPERIENCE, AND BACKGROUND

4.     I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18 of the United States Code. I am a Special Agent with the Federal

Bureau of Investigation (FBI), and have been so employed since September 2019. I am currently assigned as to the FBI San Diego Violent Crimes Task Force (VCTF), where I investigate a variety of matters, to include homicides, carjackings, kidnappings, bank robberies and Hobbs Act robberies. I have led multiple investigations of subjects and criminal organizations, who used firearms in the commission of violent acts and transported stolen vehicles across state or international lines. In my capacity as a Special Agent, I have led and participated in investigations of violent criminals, to include those who are members or associates of robbery crews and criminal street gangs.

5.      I completed approximately twenty weeks of training at the FBI Academy in Quantico, Virginia. During the training, I received instruction in a variety of investigative techniques commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of confidential human sources, electronic and physical surveillance techniques, law enforcement tactics, search and seizure laws and techniques, interviewing strategies and skills, and a variety of other subjects.

6.      My experience as an FBI Special Agent and employee has included the investigation of cases involving the use of computers and the internet to commit crimes. I have received additional training and gained experience through interviewing witnesses, subjects, and victims of violent crimes. I have participated in the execution of searches and seizures, and received advanced training focused on arrest procedures, search warrant applications, computer crimes, computer evidence identification, cellular device exploitation, and various other criminal laws and procedures. A number of these investigations have dealt with the use of electronic communication devices to assist in the commission of the crime. Persons involved in criminal activity often conduct research on potential targets using computers and the internet and communicate via these devices in furtherance of their criminal endeavors. I have received instruction from and read reports and search warrant affidavits prepared by other investigators/officers on tracing IP addresses, Internet Service Providers, e-mails, expanded headers, and computer/ internet

tools used to trace and identify the persons who commit computer crimes. This information has proven to be invaluable in proving an individual's involvement, or lack thereof, in the crime being investigated.

7.     I have led and participated in a multitude of investigations, and my interactions with other agents, and other state and local law enforcement officers familiar with violent crimes and with carjacking crimes, as well as my training, form the basis of the opinions and conclusions set forth below, which I have drawn from the facts set forth herein, and set forth in substance not verbatim, unless otherwise noted.

8.     The following is based on my own investigation, oral and written reports by other law enforcement officers, physical surveillance, public records, database checks, searches, and the results of other investigative methods. I have also spoken with Agents, as well as other law enforcement officers about their experiences, and the results of their investigations and interviews. I have become knowledgeable of the methods and modes of violent criminals.

9.     Based on the information below, there is probable cause to believe that a search of the **Subject Vehicle** will contain evidence of the aforementioned crime, as described in Attachment B.

### III.   PROBABLE CAUSE

*Background of the Investigation*

10.     The FBI and local police departments are investigating multiple armed carjackings, which Investigators believe to be related.  The FBI and El Cajon Police Department (ECPD) are investigating an armed carjacking of a vehicle in El Cajon, California on January 19, 2024.  The FBI and National City Police Department (NCPD) are also investigating a January 28, 2024 armed carjacking of a vehicle in National City, California and the subsequent transportation of the stolen vehicle into Mexico at San Ysidro, California.

11.     Based on my review of ECPD reports and information provided to me by an ECPD detective, I learned the following information: on January 19, 2024 at approximately

3

7:39 p.m., a victim contacted ECPD regarding his vehicle - an orange Dodge Challenger Scat Pack with license plate number 9JYT227 - and property being taken at gunpoint from the location of 302 S. Johnson Street in El Cajon. The victim stated, while he was walking to his vehicle, a black male wearing a black ski mask, a black jean jacket and faded jeans, approached him, pointed a Glock style handgun with a chrome slide toward his direction and demanded his car and gold chains he was wearing. The victim mentioned the suspect had come from a white BMW Sports Utility Vehicle (SUV).   In an interview with detectives, the victim stated he first observed the BMW SUV when he parked his Challenger that evening and exited it, as he was accompanied by a several friends. It was parked a few spots back from where the victim parked. Later that evening, as the victim returned to his vehicle at approximately 7:25 p.m., he used the remote start to start his vehicle. As he got near the Challenger, he noticed the black male suspect exit the front passenger side of the white BMW and approach him. After the suspect robbed the victim, he entered the driver's seat of the Challenger and as he began to pull away, the BMW SUV pulled away from the curb at the same time and followed the suspect. An ECPD detective checked the Flock Safety License Plate Reader (LPR) Camera at the location of westbound El Cajon Boulevard and Chase Avenue, which captures vehicle license plates heading to the I-8 west. The detective ran the plate that was on the stolen Challenger and found the camera captured the plate traveling west at approximately 19:42:42. The detective discovered the plates of **Subject Vehicle**, a white BMW matching the description given by the victim, passed by the same camera at 7:42:40 p.m., two seconds earlier than the Challenger. This indicated the Challenger was closely following the BMW. Shortly after ECPD received the call, ECPD officers observed an orange Dodge Challenger matching the description of the stolen vehicle driving at a high rate of speed west on I-8. A vehicle pursuit ensued. The stolen vehicle increased its speed and, due to safety reasons, marked ECPD units slowed down and stopped their pursuit.  The units could see that, as they slowed down, the vehicle exited the highway.  As marked units approached the exit, they observed the Challenger had lost control and crashed into the median at the off ramp. The

4

1  vehicle was empty upon officers' arrival, but a nearby witness told officers a male subject

2  had run from the vehicle down the ramp towards the freeway.   The subject and co-

3  conspirator(s) remained unidentified in this case.

4       12.    Based on the entirety of the facts and training and experience of the involved

5  Investigators, Investigators believe **Subject Vehicle** was involved in the armed carjacking

6  event on January 19th and **Subject Vehicle** was operated by a co-conspirator working with

7  the black male suspect who confronted the victim.   I know based on my training and

8  experience that violent criminals involved in carjackings frequently conduct surveillance

9  on their targets or "case" targets prior to executing the carjacking, so as to seek a moment

10  when the victim is alone and vulnerable.   These criminals frequently use "get-away"

11  drivers in the event that the carjacking or robbery attempt is unsuccessful and they need a

12  fast, easy means of evading law enforcement.   I believe the driver of **Subject Vehicle**

13  assisted the carjacking suspect in these respects on the night of January 19, 2024.

14       13.    Based on my training and experience and research, I am aware that Dodge is

15  a subsidiary of Chrysler and that there is a manufacturing facility in Ontario, Canada that

16  is heavily involved in the manufacturing of Challenger model vehicles.   To my knowledge,

17  the company does not operate a manufacturing plant for Challengers in the state of

18  California in the United States of America.   As such, I believe the Challenger subject to

19  the carjacking on January 19, 2024 had been transported, shipped, or receive in interstate

20  or foreign commerce.

21       14.    According to National City Police Department (NCPD) police officers'

22  reports and body worn camera footage, the victim of the January 28, 2024 carjacking gave

23  a statement to NCPD.   The victim described the following:   he stated he was carjacked at

24  gunpoint by two male suspects in the evening of January 28, 2024.   On that evening, the

25  victim was driving a 2022 Mercedes Benz Sports Utility Vehicle (SUV) bearing California

26  license plates of 9AON586, which he had rented the vehicle from Enterprise rental car

27  company. The victim had stopped the vehicle on a street in National City and was inputting

28  an address in his GPS in the vehicle. The victim then saw someone open the passenger

door of the vehicle and point a firearm at him.  Suspect 1 (S1) then told the victim to drive the vehicle.  The victim drove the vehicle down a cul-de-sac and S1 told him to stop the car.  A second suspect (S2) then opened the driver door and pulled the victim out of the vehicle.  S2 then forced the victim into the back seat of the vehicle and both suspects drove him around, while holding him at gunpoint demanding that he give them money.  The suspects eventually left the victim on the side of the road off of Proctor Valley Road.  The suspects stole the vehicle, two of the victim's Apple iPhones, his wallet containing personally identifiable information (PII) and credit cards.  The victim described one of the suspects (S1) as a heavy set Hispanic male with a tattoo on the top of one of his hands.  The victim described the second suspect (S2) as a Black male with dread lock style hair that came down toward eye level.  S2 was described as wearing a mask that covered part of his face and a light colored hoodie.

15.     According to border crossing records, the stolen Mercedes was driven into Mexico at the San Ysidro Port of Entry (POE) on January 29, 2024 at 6:52 p.m. (Pacific Time).

16.     Based on my training and experience and research, I am aware that Mercedes Benz is a foreign vehicle manufacturing company headquartered in Stuttgart, Germany. To my knowledge, Mercedes Benz does not operate a manufacturing plant in the state of California in the United States of America.  As such, I believe the Mercedes SUV subject to the carjacking on January 28, 2024 had been transported, shipped, or receive in interstate or foreign commerce.

17.     On February 29, 2024 at approximately 9:29 p.m., San Diego Police Department (SDPD) officers were notified by SDPD Detectives that MARVIN GEOVANNY RUIZ was in the area of 300 Euclid Avenue in San Diego, California and that RUIZ had an outstanding felony warrant for his arrest.  Detectives notified officers that RUIZ was seen entering a yellow Mercedes Benz sedan with California license plate of 9JSK895.  Officers observed that vehicle exit the parking lot of the Food for Less in the vicinity of 300 Euclid and observed the driver side windows had tint on them in violation

6

of California Vehicle Code. Officers conducted a traffic stop on the vehicle and the vehicle yielded. Officers found the vehicle was occupied by four individuals, one of whom was positively identified as MARVIN RUIZ, based on a prior booking photograph. RUIZ was removed from the vehicle and placed under arrest.

18.   According to law enforcement records, RUIZ has been associated with the East San Diego criminal street gang. Law enforcement records listed RUIZ as a Hispanic male with a height of approximately 6', weight of 200 pounds and a tattoo on his left hand. Investigators reviewed photos taken by SDPD officers of RUIZ following his arrest on February 29, 2024, as well as his booking photo. Investigators observed RUIZ was a heavy set Hispanic male with a tattoo on the top of his hand, matching the description provided by the carjacking victim.

19.   On March 12, 2024, a NCPD detective, who is assigned to the FBI Violent Crimes Task Force (VCTF) as a Task Force Officer (TFO) reinterviewed the victim in the carjacking. A separate detective, who is uninvolved with the case, showed the victim a six pack photo array containing RUIZ. The victim positively identified S1 as MARVIN GEOVANNY RUIZ. The victim stated, "I'm a hundred percent positive that's the guy who pointed a gun at my head". The detective also showed the victim a second six pack photo array, which included a photo of GEQUON WILLIS. The victim identified WILLIS as S2 but stated S2 had longer hair during the carjacking. The photograph used of WILLIS in the six-pack showed him with shorter hair. WILLIS's most recent booking photograph shows him with dread lock style hair that is about eye level. Furthermore, during the interview, the victim stated he remembered the Hispanic male suspect (S1) had a tattoo on the top of his hand. The victim stated the tattoo appeared fresh and dark. The victim remembered the tattoo having an "R" in it. The victim stated S1 called out to S2 and referred to S2 as "Quan" or "Keese". The victim stated the suspects also stole high end clothing that was inside of the vehicle at the time of the carjacking such as "Burberry" Sweats, "Off White" shoes, and his "Goyard" wallet. The victim described the pistol as a

possible ghost gun with gold on the lower part of the magazine, the victim believed the magazine was either gold or clear, being able to see the brass ammunition.

20.    Investigators again reviewed photos of RUIZ taken by Law Enforcement during his most recent arrest on February 29, 2024.  Investigators observed that the tattoo on the top of RUIZ's hand appeared to be recently done and the tattoo began with a capital "R" for Ruiz.  A photo of the tattoo is included below:



21.    Investigators identified social media accounts for GEQUON WILLIS, which indicate he goes by the nickname "Quon".  For example, an Instagram account that appeared to bear GEQUON WILLIS's photo had the name "itsyaboyquon2".

22.    On March 14, 2024, Investigators conducted a court authorized search of the black iPhone seized by local authorities from RUIZ during his arrest on February 29th. The search was conducted pursuant to a federal search warrant signed by Hon. Bernard G. Skomal.  During the search, Investigators observed the following content:

8

6



a.   There was a messaging conversation between RUIZ's phone and a contact named "Hit The Quan" with telephone number 619-823-1369.   The two phones exchanged messages on January 28, 2024 at around 6:42 p.m., which indicated the user of "Hit The Quan" intended to pick up RUIZ that evening. At 9:38 p.m., the user of "Hit The Quan" messaged, "Go a lil down more." Then, at 11:12 p.m., the user of "Hit The Quan" messaged RUIZ, "Save the shoes for me" with a laughing emoji.   At 1:07 a.m. on January 29, "Hit The Quan" sent a video of the 2022 Mercedes Benz Sports Utility Vehicle (SUV) with California license plate number 9AON586.   In the video, the person with the camera walks around the driver's side of the Mercedes to show the vehicle's license plate and ultimately, opens the driver's side door to reveal the interior of the vehicle.   A hand with darker complexion can be seen opening the driver's side door and a male voice is audible in the background of the video.   Still photographs taken from the video are provided below:

b. RUIZ responded to the video with, "We hella did that Lmao" and laughing emojis. At 7:49 a.m., the user of "Hit The Quan" responded with, "For sure we just need that car gone ASAP." The user "Hit The Quan" then sent RUIZ's phone an online advertisement, which showed the sale price of a similar style vehicle to the stolen Mercedes. On January 31, 2024, the user of "Hit The Quan" sent RUIZ's phone a photo of the sticker inside the stolen Mercedes showing it's Vehicle Identification Number (VIN) and manufacturing information. A photograph of the messages from January 29 at 3:53 a.m. to 5:29 p.m. is attached below:



c. There were multiple conversations, in which RUIZ appeared to attempt to buy or sell contraband and provided 230 S. Harbison Ave in National City, California as his location:

i. On January 30, 2024, RUIZ messaged a contact named, "Kenwood". RUIZ texted "Kenwood" the address for 230 S. Harbison Ave in National City and asked for an estimated time of arrival (ETA).

10

"Kenwood" and RUIZ appeared to be negotiating a payment.  After asking if "Kenwood" had cash, RUIZ provided the address for 230 S. Harbison Ave in National City and the direction, "Pull in the drive way", along with a photo of the front of 230 S. Harbison Ave in National City.

ii. In February 2024, RUIZ messaged a contact named "E90" in regards to what appeared to be a firearms deal for a black semi-automatic pistol referred to as a "Pocket Rocket".  After engaging in what appear to be negotiations over price, "E90" says, "On my way like in 20 min".  RUIZ sends "E90" the address for 230 S. Harbison Ave in National City and a photo of what appears to be a black AR pistol firearm. Photos of these messages are provided below:



23.    According to law enforcement records, in a September 2022 report to local police, 619-823-1369 was recorded as the phone number for YOLANDA WILLIS, who I believed is a female relative of GEQUON WILLIS.  She gave law enforcement officers an address of 6821 Alvarado Rd, Apt 9, San Diego, California.

24.     Additional open source records dated February 2024 attributed 619-823-1369 to GEQUON WILLIS of 6821 Alvarado Rd, Apt 9, San Diego, California.

25.     WILLIS has a Felony conviction for Carrying a Loaded Handgun: Not Registered Owner in violation of California Penal Code 25850 from December 29, 2021. Investigators identified the following photo of GEQUON WILLIS in database checks:



26.     Based on my review of these messages, my training and experience in violent crimes investigations, as well as my review of the reports and information provided to me by law enforcement officers about the crime, I believe that RUIZ's message, "We hella did that" was him bragging about the successful commission of the robbery.  I believe the message sent by "Hit The Quan" stating, "save the shoes for me" was a reference to the victim's "Off White" shoes, which were inside the carjacked vehicle.   Furthermore, I believe the video of the Mercedes, the advertisement with a sale price and the statements made by "Hit The Quan" regarding needing "the car gone asap" are evidence that WILLIS and RUIZ were attempting to sell the stolen vehicle quickly, so as not to draw attention from law enforcement.   Based on my training and experience, I know robbers and individuals involved in carjacking typically attempt to offload expensive stolen goods, such as vehicles, to liquidate the profits from the crime and to make it more difficult for law enforcement to trace the stolen goods back to the perpetrators.

27.     Based on my review of police reports and records, the victim's identifications of RUIZ and WILLIS in six-pack photo arrays, review of photos of the suspects and

12

comparison of them to suspect descriptions, as well as the contents of RUIZ's black iPhone obtained via court authorized search, I believe MARVIN GEOVANNY RUIZ and GEQUON WILLIS, did with the intent to cause death or serious bodily harm take a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce, that is, a 2022 Mercedes Benz Sports Utility Vehicle (SUV) with California license plate number 9AON586, from the person or presence of another by force and violence or by intimidation; in violation of Title 18, United States Code, Section 2119.  I believed they brandished a firearm in the commission of this crime; in violation of Title 18, United States Code, Section 924(c) and in violation of Title 18, United States Code, Section 922(g).

28.     On Friday, March 15, 2024, Hon. Bernard Skomal, USMJ signed a complaint and arrest warrants charging WILLIS and RUIZ with violating Title 18, United States Code, Section 2119.

29.     On Thursday, March 21, 2024, the FBI and NCPD executed a court authorized search of the residence at 230 S. Harbison Ave, National City, California pursuant to a federal search warrant. Investigators found a debit card in the name of the January 28th carjacking victim inside the residence.  Investigators also found a red iPhone in Ruiz's home. Investigators recalled two red iPhones were stolen from the victim of the January 28th carjacking in National City.  Investigators also found indicia of firearms possession and sales, to include but not limited to the following: a Glock gun box containing a magazine loaded with ammunition; a box of Blazer .9mm ammunition found in the bottom drawer of a bathroom vanity; a bullet proof vest; and an unlocked safe containing ammunition of various sizes and calibers.  Despite the discovery of the aforementioned items, no firearms were found inside the residence.

30.     On Friday, March 22, 2024, the FBI and local law enforcement partners arrested WILLIS at 6821 Alvarado Rd, Apt 9 in San Diego, California on the basis of his federal arrest warrant.  FBI Agents and local law enforcement partners then executed a court authorized search of 6821 Alvarado Rd, Apt 9 pursuant to a federal search warrant. During the search, in a closet which contained WILLIS's paperwork and clothing, Agents

1    found an AT&T receipt for a 128GB iPhone 15 bearing phone number 619-823-1369.

2    Agents recognized this as the same number used by "Hit The Quan" to correspond with

3    RUIZ's black iPhone about the carjacking on or about January 28 and 29th.   Agents

4    identified an empty box for a blue 128GB iPhone 15 apparently corresponding to the phone

5    described on the receipt.   Agents did not find a corresponding iPhone 15 during the search

6    of the residence.   Agents also found a red iPhone within the closet believed to be used by

7    GEQUON WILLIS for personal storage.   Agents found the SIM card had been taken out

8    of the red iPhone.   Agents recalled two red iPhones were stolen from the victim of the

9    January 28th carjacking in National City.  Agents found two ski masks-- a black ski mask

10   and a gray ski mask-- in the same closet as the AT&T receipt, empty cell phone box and

11   red iPhone.

12                 *Identification of Subject Vehicle in Connection with WILLIS*

13        31.   On February 21, 2024, according to local police records, an officer conducted

14   a traffic stop on **Subject Vehicle** at 200 E Washington Ave in San Diego because the

15   vehicle had illegal tint on the front windows and did not have a front vehicle plate in

16   violation of California Vehicle Code (CVC). Officers found the driver of **Subject Vehicle**

17   was GEQUON WILLIS.   WILLIS claimed he did not have insurance for the vehicle.

18   WILLIS was cited for three violations of CVC.

19        32.   On March 18, 2024, I conducted physical surveillance in the vicinity of

20   WILLIS's residence at 6821 Alvarado Road, Apt 9, San Diego, California at approximately

21   12:24 p.m. and observed **Subject Vehicle** parked in the parking lot of 6821 Alvarado Road

22   in a spot adjacent to the front door of apartment 9.   At 1:43 p.m., NCPD detectives

23   conducting surveillance in the vicinity of apartment 9 observed WILLIS walked out the

24   front door of apartment 9.  He entered the driver's seat of **Subject Vehicle** and departed.  I

25   reviewed video taken by the detectives during the surveillance.  I observed that WILLIS

26   appeared to hold multiple items of clothing and sneakers in his hands as he approached

27   **Subject Vehicle**; he quickly placed the items in the backseat of the car before entering the

28

driver's seat and departing.  A screen shot from the video, showing WILLIS carrying the aforementioned items to the **Subject Vehicle**, is provided below:



33.    On March 22, 2024, as the FBI executed the arrest of GEQUON WILLIS at 6821 Alvarado Rd, Apt 9, San Diego, California, Agents and local law enforcement officers observed **Subject Vehicle** parked in the lot in the vicinity of apartment 9.  **Subject Vehicle** was towed from the lot and impounded at a secure lot at NCPD Headquarters located at 1200 National Boulevard, National City, California, pending the acquisition of a search warrant.

34.    Based on my experience and training in violent crimes (i.e. carjacking and robbery) and gang related investigations, I am aware that such criminals often carry firearms on their person and in their vehicles.  They often do so as a form of self-protection.  Criminals who commit robberies and carjackings frequently possess high value items, such as expensive jewelry, luxury clothing and vehicles, as a result of their crimes.  This makes them a target for other criminals, who may in turn attempt to rob them and steal the proceeds of their illicit activities.   Considering their wealth is the fruit of illegal activities, when these criminals are robbed, they do not seek assistance or protection from law

enforcement.   Instead, they generally view firearms possession and street violence as a more acceptable form of protecting themselves from robbers or rival criminals/gang members.   I am aware that violent criminals frequently keep firearms, ammunition and firearms paraphernalia in close proximity as they travel on foot or in vehicles, often they keep such items within their vehicles in arms reach and in bags easily carried on their person (i.e. cross body bags or satchels, backpacks).

35.   Based on my experience and training, as well as consultation with other law enforcement officers experienced in carjacking and robbery investigations, accomplices in carjackings often exchange information and materials before and after the crime. They often meet before the carjacking or robbery to share necessary materials and plans for the carjacking or robbery's execution, as well as after the crime to split and to spend the proceeds. Based upon my experience and training, consultation with other law enforcement officers experienced in violent crimes investigations, and all the facts and opinions set forth in this affidavit, I know that individuals involved in carjackings often maintain the following items in their homes and vehicles.   They frequently keep these items in their possession for extended periods of time, to include months or sometimes years after the crime:

a.   clothing, and materials used during the carjacking, to include firearms, firearm parts and paraphernalia and ammunition, along with any proceeds attained from the carjacking and materials taken from the victim;

b.   records of their plans to carjack and rob victims, and records of any reporting of the crimes by the press to the public;

c.   articles of personal property evidencing the identity of person(s) occupying, possessing, residing in, owning, frequenting or controlling the residence and premises;

d.   cellular telephones;

e.   data residing in vehicle infotainment and telematics systems, which I know based on materials published by vehicles manufacturers, as well as through

consultation with law enforcement personnel experienced in this technology, includes call logs and SMS messages sent through a device connected to the vehicle, geolocational data and navigation information, and contacts lists synced to the vehicle from the connected device; and

                     f.      photographs of their associates and stolen proceeds from carjackings or robberies.

36. Further, in my training and experience, I have learned that individuals engaged in carjackings and robberies often use their cell phones, computers and electronic media to conspire, plan, and coordinate their criminal activities and that cellphones and electronic media retain evidence of their crimes such as communications, photographs, videos, contact information of co-conspirators, location data, travel arrangements, and financial data that evidence criminal activities, and usually maintain their cell phones on their person and/or their residence and vehicles. They frequently use cellular telephones to arrange deals to acquire firearms, firearms parts and ammunition. They frequently communicate via social media and web-based platforms to coordinate logistics around the crime and to plan to cover up the crime after the fact.

37. According to the BMW user's guide for the X5 and open source information in-vehicle telematics/infotainment systems were available in that model. Based upon my research and consultation with law enforcement personnel with expertise in carjacking investigations and infotainment technology, I believe data from the **Subject Vehicle's** infotainment and telematics system will likely provide evidence about whether the **Subject Vehicle** was driven on or about the times of the armed carjacking and what phones or devices connected to the **Subject Vehicle** during the timeframe of interest. Additionally, the vehicle infotainment and telematics data, to include saved contacts lists and location data, will potentially identify connections between co-conspirators and locations of interest to the investigation.

**IV.   METHODOLOGY FOR CELLULAR TELEPHONES**

38.     It is not possible to determine, merely by knowing a cellular telephone's or tablet's make, model and serial number, the nature and types of services to which the devices are subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their devices—both phones and tablets—over the internet and remotely destroy all of the data contained on the devices. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones and tablets do not have hard drives or hard-drive equivalents and store information in volatile memory within the devices or in memory cards inserted into the devices. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models, and some tablets, using forensic hardware and software. Even if some of the stored information on the devices may be acquired forensically, not all of the data subject to seizure may be so acquired.  For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

39.     Following the issuance of this warrant, I will collect any responsive cellular telephone and subject them to analysis. All forensic analysis of the data contained within the responsive cellular telephone and any associated memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

40.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including

manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## V.    PRIOR ATTEMPTS TO OBTAIN DATA

41.    The United States has not attempted to obtain the data to be searched pursuant to this warrant by other means.

## VI.    CONCLUSION

42.    Based on the facts set forth in this affidavit, and my training and experience as a law enforcement officer, I believe that RUIZ and WILLIS committed offenses enumerated in Title 18, United States Code, Section 2119, Carjacking; Title 18, United States Code, Section 924(c), Brandishing a Firearm during a Crime of Violence; and Title 18, United States Code, Section 992(g), Felon in Possession of a Firearm, and that there is evidence and/or property related to the crimes presently located at the **Subject Vehicle**, as described in Attachment A, for the items described in Attachment B.

43.    WHEREFORE, I request the Court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachments A, in order to seize the items listed in Attachment B.

_____
Anne E. Skomba, Special Agent
Federal Bureau of Investigation


Attested to by the applicant in accordance with the requirement of Fed. R.Crim.P.4.1 by telephone on this _____1st_____ day of April, 2024.

_____
HONORABLE VALERIE E. TORRES
United States Magistrate Judge

19

**ATTACHMENT A**
DESCRIPTION OF PROPERTY TO BE SEARCHED

**Subject Vehicle** – 2016 white BMW X5 with California license plate 8ZYU141. The search of the **Subject Vehicle** includes a search of its telematics/infotainment systems, which as detailed below, includes geolocational data, navigational information, and the call logs, contact list, and SMS messages sent through or synced to the system. This vehicle is located in the Southern District of California.



**ATTACHMENT B**

**Items to be seized**

The evidence to be seized from the search of properties identified in Attachment A is as follows:

a. Property or clothes, as described by the victims, used in the perpetration of the carjackings;

b. Property taken from the victims of the carjackings;

c. the **Subject Vehicle's** telematics/infotainment systems, including geolocational data, navigational information, and the call logs, contact list, and SMS messages sent through or synced to the system tending to constitute evidence of violations of 18 U.S.C. § 2119 (Carjacking), 18 U.S.C. § 924(c) (Brandishing a firearm in a crime of violence) and 18 U.S.C. § 922(g) (Possession of a firearm or ammunition by a prohibited person) including:

    i. vehicle location information on January 18, 2023 through January 20, 2023 as well as January 27, 2023 through January 29, 2023;

    ii. vehicle status information from January 18, 2023 through January 20, 2023 as well as January 27, 2023 through January 29, 2023 reflecting the activities and movements of the vehicle on those dates (including, but not limited to, data reflecting changes in gas mileage and the use of doors and other vehicle features);

    iii. communications regarding and coordination of the carjackings;

    iv. communications regarding and coordination of the disposal of vehicles or other property obtained as a result of the carjackings; and

    v. mobile devices, synced accounts, user names and user information in the infotainment system, which might reflect the individuals who used and had control over the system on or about January 18, 2023

2

through January 20, 2023 as well as January 27, 2023 through January 29, 2023.

d.  Any cellular telephone device and storage devices, such as SIM cards or memory devices attached to, inserted in or seized with the device, will be searched and seized in accordance with the "Procedures For Electronically Stored Information as to Any Cellular Telephone" provided in the affidavit and submitted in support of this warrant. The following data will be seized only to the extent that it contains evidence of violations of 18 U.S.C. § 2119 (Carjacking), 18 U.S.C. § 924(c) (Brandishing a firearm in a crime of violence) and 18 U.S.C. § 922(g) (Possession of a firearm or ammunition by a prohibited person), such as communications, records, or data, including emails, text messages, photographs, audio files, videos, or location data:

    i.  Tending to indicate efforts to conduct and/or cover up carjacking(s) and use firearms in crimes of violence as defined in 18 U.S.C. §§ 2119, 924(c) and 922(g);

    ii.  Tending to identify other facilities, storage devices, or services-such as email addresses, IP addresses, phone numbers- that may contain evidence of efforts to conduct and/or cover up carjackings and use firearms in crimes of violence, as defined by 18 U.S.C. §§ 2119, 924(c) and 922(g);

    iii.  Tending to identify co-conspirators, criminal associates, or others involved in crimes as defined in 18 U.S.C. §§ 2119, 924(c) and 922(g);

    iv.  Tending to identify the user of, or persons with control over or access to, the subject phone; or

3

1

2

3

     v. Tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data described above;

which are evidence of violations of Title 18, U.S.C. § 2119, Title 18, U.S.C. § 924(c) and Title 18, U.S.C. § 922(g).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28